UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERNESTO DOMINGUEZ,

        Plaintiff,

   v.

THE CITY OF SEATTLE, et al,

        Defendants.

CASE NO. C05-1400JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment by the City of Seattle, Seattle Police Officers Phillip Ocker and Kevin Runolfson, and five unidentified Seattle Police Officers (Dkt. # 31) (the "Seattle Defendants"). Also before the court is a motion for summary judgment by Kroger Group Cooperative, the Kroger Company, and Quality Food Centers, Inc. (Dkt. # 34) (the "QFC Defendants"). No party has requested oral argument and the court finds the matter suitable for decision on the papers submitted. For the reasons stated in this order, the court GRANTS Defendants' motions for summary judgment (Dkt. ## 31, 34).

## II. BACKGROUND

Early in the morning on August 13, 2004, at approximately 1:00 am, Plaintiff Ernesto Dominguez sat outside the QFC grocery store on Broadway Avenue in Seattle's

ORDER – 1

Capitol Hill neighborhood with two homeless friends, eating sandwiches. Defendant Phillip Ocker, an off-duty Seattle Police Officer, was working security for QFC. While on duty for QFC, Officer Ocker wore his full Seattle Police Department uniform. Officer Ocker received a complaint from a customer around 1:00 a.m. The customer told Officer Ocker that three men were sitting outside QFC and harassing customers as they entered. Tran Decl., Ex. B (Ocker Dep. at 13). Officer Ocker approached the three men, telling them to leave QFC property. Id. Although the other two men left QFC, Mr. Dominguez refused. Id. (Ocker Dep. at 16). Mr. Dominguez admits that he was asked to leave QFC property several times but refused. Id., Ex. A (Dominguez Dep. at 56, 85, 166). Officer Ocker called for backup and Officer Kevin Runolfson arrived. Id. (Ocker Dep. at 27). Unlike Officer Ocker, who was off-duty and working security, Officer Runolfson was a regular on-duty Seattle Police Officer.

Officer Ocker issued Mr. Dominguez a trespass admonishment which prevented Mr. Dominguez from entering the QFC for a period of one year. Id. (Ocker Dep. at 27); Ocker Decl., Ex. B (Trespass Admonishment). Mr. Dominguez refused to leave.[1] Id. The officers took Mr. Dominguez's arms and escorted him from QFC property and onto the adjacent sidewalk. Tran Decl., Ex. B (Ocker Dep. at 28), Ex. C (Runolfson Dep. at 20). Mr. Dominguez did not want to leave: he wanted to purchase a cookie. Mr. Dominguez then asked what would happen if he went back on QFC property. Id., Ex. A

---

[1] The Seattle and QFC Defendants both present as undisputed fact that Mr. Dominguez received a written trespass admonishment from Officer Ocker *prior* to being escorted from the property. Seattle Mot. at 4; QFC Mot. at 4. Although Mr. Dominguez does not dispute this order of events, the deposition testimony is less than clear on the timing of the written trespass admonishment. See Tran Decl., Ex. B (Ocker Dep. at 28-29). In any event, it is undisputed that Mr. Dominguez remained on QFC property after being ordered to leave the premises. See Id., Ex. A (Dominguez Dep. at 63). Mr. Dominguez only left QFC property when he was physically removed by Officers Ocker and Runolfson. Howell Decl., Ex. A (Dominguez Dep. at 60-62), Tran Decl., Ex. B (Ocker Dep. at 28-29), Ex. C (Runolfson Dep. at 20). After Mr. Dominguez's final refusal to leave QFC property, the officers "each just took one of his arms, he stood up and he walked off the property to this corner with us." Tran Decl., Ex. C (Runolfson Dep. at 20).

ORDER – 2

(Dominguez Dep. at 63-64, 168-69), Ex. B (Ocker Dep. at 29); Ex. C (Runolfson Dep. at 20, 25-26). Officer Runolfson told Mr. Dominguez that he would be arrested for trespass. Id., Ex. C (Runolfson Dep. at 25). Mr. Dominguez knew that if he moved from the public sidewalk back onto QFC property, he would be arrested. Id., Ex. A (Dominguez Dep. at 166). However, he wanted to see what the officers would do and believed the officers were acting wrongfully. Id., Ex. A (Dominguez Dep. at 166). When Mr. Dominguez stepped back toward QFC, the officers arrested him. Id., Ex. C (Runolfson Dep. at 26).

Mr. Dominguez claims that he did not actually step onto QFC property, id., Ex. A (Dominguez Dep. at 166); he admits that his intention as he stepped towards QFC was to find a manager, and to test the officers to see what they would do if he disobeyed their order. Id. Mr. Dominguez was warned that he would be arrested if he went back toward QFC, and admits that he disobeyed the officer's instruction:

> A: . . . I was in the sidewalk at this point, and he say, you take a step towards the entrance [of QFC] and I will arrest you.
>
> Q: Did you say anything in response?
>
> A: No. I looked at him and I took a step towards there.
>
> Q: Why did you take a step towards the entrance?
>
> A: Because I wanted to talk to the manager myself.
>
> Q: At that point you knew what the officer's instruction was, right?
>
> A: Yes.

Id., Ex. A (Dominguez Dep. at 63-64). Officer Runolfson claims Mr. Dominguez was arrested without incident and transferred to the King County Jail.[2] Id., Ex. C (Runolfson Dep. at 26). Mr. Dominguez claims he was pushed against the police car, but does not

---

[2] Mr. Dominguez has not filed suit against King County for his treatment while being held in the King County Jail.

ORDER – 3

allege resulting physical injuries.  See Howell Decl., Ex. A (Dominguez Dep. at 66).  Mr. Mr. Dominguez's homeless friend, Scott "Tree" Rogholt, does not mention the pushing or rough treatment of Mr. Dominguez.  His declaration states that "[a] Seattle police officer arrived and Mr. Dominguez was handcuffed and driven away in the police car."  See Rogholt Decl. ¶ 6.

In the holding cell, a corrections officer asked a group of inmates (including Mr. Dominguez) whether anyone was suicidal.  Mr. Dominguez responded, "Who wouldn't be suicidal being here."  Tran Decl., Ex. A (Dominguez Dep. at 86-87).  Mr. Dominguez was then placed in solitary confinement.  Id.  Mr. Dominguez alleges the jail cells were disgusting, with blood and spit on the floor.  Id.  Although Mr. Dominguez was placed on a list of inmates scheduled to speak with a mental health provider, he was discharged from the King County Jail before the meeting.  Id., Ex. A (Dominguez Dep. at 99).  Mr. Dominguez did meet with one mental health provider before he left.  When asked why he was in jail, Mr. Dominguez stated: "I tried to play a joke on the system, and the system played a joke on me."  Id.

### III.  ANALYSIS

In examining these motions for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v.

ORDER – 4

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

### A. Mr. Dominguez's Claims Under 42 U.S.C. § 1983.

Mr. Dominguez alleges that his Constitutional rights were violated when he was arrested without probable cause.  The Seattle and QFC Defendants have moved for summary judgment on Mr. Dominguez's 42 U.S.C. § 1983 ("§ 1983") claims.  Defendants argue that the arrest of Mr. Dominguez was proper, and that Mr. Dominguez's Constitutional rights were not violated because the officers had probable cause to arrest him.  For the reasons stated below, the court concludes that Mr. Dominguez's § 1983 claims should be dismissed.

#### 1. Officer Runolfson Had Probable Cause to Arrest Mr. Dominguez.

A predicate to a § 1983 action for unlawful arrest is the absence of probable cause. See Pierson v. Ray, 386 U.S. 547, 555 (1967) ("A peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved.").  Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed.  Ybarra v. Illinois, 444 U.S. 85, 91 (1979).  The validity of the arrest is determined by the objective facts and circumstances known to the officer at the time of the arrest.  Beck v. Ohio, 379 U.S. 89, 96 (1964); State v. Huff, 826 P.2d 698, 701 (Wash. Ct. App. 1992).  "It is immaterial whether or not the [arrestee] was actually violating the law at the time of the arrest if in fact his conduct was such as to lead a reasonable prudent officer to believe in good faith he was violating the law." Sennett v. Zimmerman, 314 P.2d 414, 416 (Wash. 1937).  The police must only show that, "under the totality of the circumstances," "a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime."  United States v. Valencia-Amezcua, 278 F.3d 901, 906 (9th Cir. 2002)

ORDER – 5

The Seattle Defendants contend there was probable cause to believe that Mr. Dominguez was trespassing on QFC property because the facts known to the officers were sufficient to reasonably conclude that Plaintiff was trespassing. Officer Ocker issued Mr. Dominguez a trespass admonishment, and Mr. Dominguez had begun to proceed back to QFC. Mr. Dominguez urges that there was no probable cause for his arrest because he merely "took a step towards" QFC. He urges that his arrest was unlawful because although he made a move toward QFC, he had not actually arrived on QFC property. See Pl.'s Opp. at 8.

In considering these motions for summary judgment, the court must take all inferences from the facts in favor of Mr. Dominguez. Although both officers have testified that Mr. Dominguez took several steps onto QFC property, for purposes of this motion the court must accept Mr. Dominguez's version of the facts: he took a step towards QFC (remaining on the sidewalk) to test the officers, to see if they really would arrest him, and to re-enter the QFC premises to find a manager. See Tran Decl., Ex. A (Dominguez Dep. at 63-64). Mr. Dominguez admits his intent to disobey the officer's orders and return to QFC. Mr. Dominguez argues that the officers did not have probable cause to arrest him because he was standing on the sidewalk outside QFC. He contends that even though he was stepping toward QFC, intending to re-enter, he had not yet committed the trespass. Mr. Dominguez concludes that there was no probable cause to arrest him. However, Mr. Dominguez admits his intent was to challenge the order to leave QFC, and to test whether he would be arrested. He admits that he was told in advance that he would be arrested if he took another step toward QFC. Id., Ex. A (Dominguez Dep. at 63-64).

The federal courts have not required police to carry surveying equipment and assessor's maps when making a probable cause determination for criminal trespass. Bodzin v. Dallas, 768 F.2d 722, 725 (5th Cir. 1985) ("[W]e cannot expect our police

ORDER – 6

officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law.") (quoting Saldana v. Garza, 684 F.2d 1159, 1165 (5th Cir. 1982)). The relevant inquiry is whether the arresting officers had a reasonable belief that the arrestee had violated trespass laws. See Dowling v. City of Philadelphia, 855 F.2d 136, 142 n. 6 (3rd Cir. 1988).

     Mr. Dominguez contends that because he was standing on the sidewalk the officers did not have probable cause. The court concludes otherwise. These officers had previously physically removed Mr. Dominguez from QFC property after he refused their orders to leave. They had probable cause to arrest him for trespass when they first removed him. The fact that the officers were willing to allow Mr. Dominguez to leave without being arrested does not mean they did not have probable cause for arrest. Mr. Dominguez would not have been arrested if he had left the premises; however, when he decided to test the officers, Officer Runolfson already had probable cause to arrest him for trespass.[3] Accordingly, Mr. Dominguez's claim under § 1983 should be dismissed.

     Because the court determines that Officer Runolfson and Officer Ocker had probable cause to believe Mr. Dominguez committed criminal trespass, the court need not reach the issue of qualified immunity and Mr. Dominguez's § 1983 claims must be dismissed.[4]

---

[3] The fact that Mr. Dominguez's initial refusal to leave was not the officers' proffered basis for the arrest is immaterial. An officer need not have in mind the specific charge on which the arrest can be justified. United States v. Patzer, 284 F.3d 1043, 1046 (9th Cir. 2002); Devenpeck v. Alford, 543 U.S. 146 (2004). Officers Ocker and Runolfson had probable cause to arrest Mr. Dominguez for criminal trespass when he refused to leave QFC property.

[4] If the court were to reach the question of qualified immunity it would conclude that Officers Ocker and Runolfson had qualified immunity. The arrest of Mr. Dominguez for trespass followed an extended interaction between the officers and Mr. Dominguez during which he refused to leave QFC property, which culminated in his physical ejection from the property. Even if the court concluded that the officers did not have probable cause to arrest Mr. Dominguez, a

ORDER – 7

### 2.     The City of Seattle is Not Liable Under 42 U.S.C. § 1983.

To prevail against a municipality under § 1983, the plaintiff must identify a municipal policy or custom which itself caused the plaintiff's injury. See, e.g., Bryan County Commissioners v. Brown, 520 U.S. 397 (1997). The City of Seattle argues that Mr. Dominguez has failed to articulate the policy or practice which forms the basis for his claims against the City. A municipality cannot be held liable under § 1983 merely because a plaintiff has suffered a deprivation of rights at the hands of a municipal employee. Mr. Dominguez does not respond to this argument and the court finds no facts to support a § 1983 claim against the City. Mr. Dominguez's claim against the City of Seattle pursuant to § 1983 should be dismissed.

### 3.     The QFC Defendants are Not Liable Under 42 U.S.C. § 1983.

In order to maintain a cause of action under § 1983, Mr. Dominguez must show the deprivation of a right secured by the Constitution and the laws of the United States by a state actor. Lugar v. Edmondson Oil Co., 457 U.S. 922, 929-30 (1982). When asserting a cause of action under § 1983 against a private party, the plaintiff most show that the private party acted in concert with a state actor.[5] In this case, Mr. Dominguez fails to demonstrate that his Constitutional rights were violated and the court need not consider whether QFC acted in concert with a state actor.

Mr. Dominguez fails to show that QFC played any part in the arrest of Mr. Dominguez. QFC did not employ Officer Runolfson, who actually arrested Mr.

---

reasonable officer would have believed it was lawful to arrest Mr. Dominguez for trespass in light of the facts and circumstances known to Officers Ocker and Runolfson at the time they arrested Mr. Dominguez.

[5] Such a showing is frequently made where the officer and the private party were jointly engaged with state officials in the prohibited action, acting under "color of law" for purposes of § 1983. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 153 (1970) (plaintiff entitled to relief under § 1983 against private party if she can prove that private party and police officer "reached an understanding" to cause her arrest on impermissible grounds).

ORDER – 8

Dominguez. QFC played no role in having Mr. Dominguez arrested, apart from hiring store security who called for backup. See, e.g., Prowisor v. Bon Ton, Inc., 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) (Police reliance on information provided by store security guards does not convert store into state actor). QFC's actions did not cause the arrest.[6] Mr. Dominguez's § 1983 claims against the QFC Defendants should be dismissed.

**B.     Outrage and Negligent Infliction of Emotional Distress.**

The Seattle Defendants and QFC Defendants move for summary judgment on Mr. Dominguez's state law claims for outrage[7] and negligent infliction of emotional distress. Mr. Dominguez alleges that the circumstances of his arrest and the conditions of his detention support his claim for outrage.[8] The basic elements of the tort of outrage are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. Rice v. Janovich, 742 P.2d 1230, 1238 (Wash. 1987). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

---

[6] Mr. Dominguez also fails to produce evidence that he was arrested pursuant to some unconstitutional QFC policy. See Otani v. City & County of Hawaii, 126 F. Supp. 2d 1299 (D. Haw. 1998).

[7] The tort of outrage is also known as "intentional infliction of emotional distress." See Rice, 742 P.2d at 1238.

[8] The Seattle Defendants argue that the court should dismiss Mr. Dominguez's claim for outrage because his emotional distress damages are recoverable as part of his § 1983 claim, citing Rice v. Janovich, 742 P.2d 1230, 1238 (Wash. 1987). Rice held that it was error to instruct the jury on both outrage and assault because the instruction allowed for the possibility of double recovery. However, Rice dealt with two state law claims and the possibility of double recovery under state law. Mr. Dominguez asserts independent state and federal law claims. The parties have cited no precedent holding that recovery under a state law tort theory is barred by the possibility of recovery under § 1983. Accordingly, the court declines to dismiss Mr. Dominguez's state law claims as "superfluous," as the Seattle Defendants request.

ORDER – 9

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby v. Samson, 530 P.2d 291, 295 (Wash. 1975).[9]

### 1. Mr. Dominguez Does Not State a Claim for Intentional Infliction of Emotional Distress Because the Conduct Was Not Extreme or Outrageous.

Mr. Dominguez asserts a claim for intentional infliction of emotional distress based on his arrest and detention. Mr. Dominguez alleges that he was unlawfully arrested by Officers Runolfson and Ocker, that he was roughly treated, that the conditions of his detention were deplorable, and that these acts constitute "extreme and outrageous" conduct sufficient to support his outrage claim.

It is first for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. Dicomes v. State, 782 P.2d 1002, 1012-13 (Wash. 1989). Liability for the tort of outrage "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Grimsby, 530 P.2d at 295. In this area a plaintiff must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration.

The conduct alleged in this case was not sufficiently extreme to result in liability. Mr. Dominguez claims that his outrage claim is viable because Officer Ocker "got really violent" and "slammed me against the police cruiser, he grabbed me again" during his arrest. Id., Ex. A (Dominguez Dep. at 66). However, beyond this characterization, Mr.

---

[9] The Seattle Defendants argue that Mr. Dominguez's claim for outrage must fail because "he cannot demonstrate any objective symptoms of emotional distress susceptible to medical diagnosis and proved through medical evidence," citing Haubry v. Snow, 31 P.3d 1186, 1194 (Wash. Ct. App. 2001). That case held that, with regard to her claim for the tort of outrage, Plaintiff Connie Haubry's "emotional distress must be susceptible to medical diagnosis and proved through medical evidence" in order for her claim to be viable. However, the Seattle Defendants overlook Kloepfel v. Bokor, 66 P.3d 630 (Wash. 2003), which disapproved of the reasoning in Haubry, and set forth in clear terms the status of objective symptomatology as it relates to claims for the tort of outrage: "We have never applied the objective symptomatology requirement to intentional infliction of emotional distress. * * * Quite simply, objective symptomatology is not required to establish intentional infliction of emotional distress." Id. at 633-34.

ORDER – 10

Dominguez does not allege any injuries. Although he describes his body touching the car, he presents no evidence that the contact caused injury or pain. Mr. Dominguez's description of the events and search do not demonstrate conduct sufficiently extreme to result in liability. Being pushed towards a police car during the course of a lawful arrest (without injury) is not extreme or outrageous. Although Mr. Dominguez describes a search and handcuffs, he doesn't allege that the handcuffs were too tight, that he suffered physical injury, or that his arrest was anything more than routine. His own eye-witness describes no extraordinary facts or circumstances surrounding the arrest. The allegations in this case are insufficient as a matter of law to support a claim of outrage.

Mr. Dominguez also contends that placing him in an unsanitary and disgusting jail cell was extreme and outrageous conduct.[10] Undoubtedly, being placed in a jail cell was unpleasant. It is likely that being placed in solitary confinement on suicide watch was even more unpleasant. Setting aside whether any Defendant was responsible for conditions at the jail, Mr. Dominguez has not identified any conduct that was extreme, outrageous, or unlawful. When asked if anyone was suicidal, he made a quip about being suicidal. Placing him on suicide watch was not an unreasonable action under those circumstances. Indeed, not placing Mr. Dominguez on suicide watch after he responded to the inquiry regarding suicide might have been an unreasonable action.

The conduct described by Mr. Dominguez was not "extreme" or "beyond all bounds of decency." See Seaman v. Karr, 59 P.3d 701 (Wash. Ct. App. 2002) (Outrage claim stated where Tacoma S.W.A.T. members (1) mistakenly invaded wrong house with machine guns and flash-bang grenades, setting the carpet on fire; (2) knocked an elderly resident to the ground; (3) threatened to kill the elderly resident if he moved; (4) painfully handcuffed innocent residents for hours; (5) refused to identify themselves; and (6)

---

[10] There is no evidence that any Defendant was responsible for conditions in the King County facility where Mr. Dominguez spent the night. King County is not a party to this lawsuit.

ORDER – 11

refused to admit their mistake); see also Kloepfel v. Bokor, 66 P.3d 630 (Wash. 2003) (Outrage claim stated where police officer harassed female ex-roommate for over three years, called her house and work over 700 times, and threatened to kill her on numerous occasions).

The allegations by Mr. Dominguez fall below the extreme and outrageous conduct implicated in the tort of outrage. Having failed to establish the first element of the tort of outrage, the court need not consider the other two elements. Because Mr. Dominguez has failed to establish sufficiently extreme or outrageous conduct, his claims for outrage should be dismissed against all parties.

**2.   Mr. Dominguez Does Not State a Claim for Negligent Infliction of Emotional Distress Because He Does Not Demonstrate Objective Symptoms of Emotional Distress Proved Through Medical Evidence.**

Mr. Dominguez also asserts a claim for negligent infliction of emotional distress based on his arrest and detention. A plaintiff may recover for negligent infliction of emotional distress by proving "negligence, i.e., duty, breach, proximate cause, and damage, and . . . the additional requirement of objective symptomatology." Hunsley v. Giard, 553 P.2d 1096, 1102-03 (Wash. 1976). The plaintiff must also prove emotional distress by "objective symptomatology." The "emotional distress must be susceptible to medical diagnosis and proved through medical evidence." Hegel v. McMahon, 960 P.2d 424 (Wash. 1998). The symptoms of emotional distress must "constitute a diagnosable emotional disorder." Id.

The Seattle and QFC Defendants have moved to dismiss Mr. Dominguez's claim for negligent infliction of emotional distress for lack of objective medical evidence. Mr. Dominguez does not respond to this argument. Mr. Dominguez failed to provide medical evidence of objective symptomatology, and his subjective statements of emotional distress are insufficient to defeat summary judgment. See Dwyer v. TW Services, 973 F.

ORDER – 12

Supp. 981, 987 (W.D. Wash. 1997).  The court concludes that his claim for negligent infliction of emotional distress should be dismissed for this reason, as well.

The Seattle Defendants argue that Mr. Dominguez's claim for negligent infliction of emotional distress should also be dismissed for another reason: the acts on which the claim is based are intentional.  See, e.g., St. Michelle v. Robinson, 759 P.2d 467 (Wash. Ct. App. 1988) (intentional acts of sexual abuse did not give rise to cause of action for negligent infliction of emotional distress).  Mr. Dominguez does not argue that St. Michelle is inapplicable here, and the court agrees with the Seattle Defendants that this second reason compels dismissal.

The QFC Defendants urge another alternative ground for dismissal:  QFC did not owe Mr. Dominguez a duty of care once it had trespassed him from QFC property.  Mr. Dominguez argues that he was owed a duty of care as a business invitee on the premises.  However, when Officer Ocker trespassed him, Mr. Dominguez was no longer a business invitee.  A business owner owes no duty of care to a trespasser except to refrain from willfully or wantonly injuring the trespasser.  Zuniga v. Pay Less Drug Stores, 917 P.2d 584 (Wash. Ct. App. 1996).  QFC did not violate any duty of care owed to Mr. Dominguez and his claim for negligent infliction of emotional distress should be dismissed.

## IV.  CONCLUSION

The court GRANTS the motion for summary judgment by the Seattle Defendants (Dkt. # 31) because the officers had probable cause to arrest Mr. Dominguez for trespass and because Mr. Dominguez fails to state a claim for outrage or negligent infliction of emotional distress.  The court also grants summary judgment on behalf of the unidentified Seattle Police Officers.  The court GRANTS the motion for summary judgment by the QFC defendants (Dkt. # 34) because the officers had probable cause to arrest Mr. Dominguez, because Mr. Dominguez otherwise fails to state a claim under § 1983, and

because Mr. Dominguez fails to state a claim for outrage or negligent infliction of emotional distress.

IT IS SO ORDERED.

Dated this 30th day of August, 2006.

/s/ James L. Robart

JAMES L. ROBART
United States District Judge

ORDER – 14